[No. B195253. Second Dist., Div. Eight. Mar. 12, 2008.]

BEST INTERIORS, INC., Plaintiff and Respondent, v.
MILLIE AND SEVERSON, INC., Defendant and Appellant;
PRESBYTERIAN INTERCOMMUNITY HOSPITAL, INC., Defendant and
Respondent.

1322

## Counsel

Law Offices of Ted R. Gropman, Ted R. Gropman; Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Defendant and Appellant.

Beam, Brobeck West, Borges & Rosa, Rippetoe Miles, Gregory L. Rippetoe and Laura A. Miles for Plaintiff and Respondent.

Bewley, Lassleben & Miller, Kevin P. Duthoy and Jeffrey S. Baird for Defendant and Respondent.

## Opinion

EGERTON, J.*—

### SUMMARY

Under Code of Civil Procedure section 1281.2, the trial court denied a petition to compel arbitration. That section gives the court the discretion to deny enforcement of an arbitration agreement, and to order all parties to litigate in a single action, if the court determines that (1) a party to the arbitration agreement is also a party to a pending court case with a third party arising out of the same transaction, and (2) there is a possibility of conflicting rulings on a common issue of law or fact. We find no abuse of discretion in the trial court's decision. We also reject the contention that the Federal Arbitration Act prevents the trial court from exercising its discretion under Code of Civil Procedure section 1281.2.

### FACTUAL AND PROCEDURAL BACKGROUND

Millie and Severson, Inc. (M&S), is a general contractor. M&S contracted with Presbyterian Intercommunity Hospital, Inc. (Presbyterian), to construct a

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

facility in Whittier, California. M&S in turn contracted with Best Interiors, Inc. (Best), for the construction and installation of metal framing, gypsum board, and Portland cement plaster construction for the facility, for a contract price of $2,848,161.

The facility was completed. But Best claims that more than $1.2 million of the contract price remains unpaid; that it incurred additional construction costs because of various disruptions to the construction schedule; and that the reasonable value of materials and services Best actually furnished for which M&S has not paid is more than $2 million. Best sued M&S, Presbyterian, and two building inspectors, Steve Seals and Joseph Alcantara.[1]

Best alleged that M&S's failure to manage, coordinate, and schedule the work properly interfered with, hindered, and delayed Best's work on the project. These disruptions significantly increased the nature, scope, and duration of Best's work. Moreover, because the project was a health care facility, state law required an observation, inspection, and testing program, including an inspector of record (IOR) hired by Presbyterian and certified by the state to perform inspections during the construction. Best alleged that improper and unnecessary inspections by the building inspectors Presbyterian hired (Seals and Alcantara) disrupted and hindered its work. Specifically, Best alleged Presbyterian obtained state approval for Seals to serve as IOR for the project, and that Seals and Presbyterian improperly allowed Alcantara—who was not qualified or certified as an inspector—to oversee and inspect the project and otherwise to perform the IOR's duties. Best alleged that Alcantara carried on his improper and illegal inspection activities with the full knowledge, consent, authorization, or ratification of Seals, Presbyterian, and M&S.

M&S petitioned to compel arbitration of the dispute between M&S and Best and to stay Best's lawsuit pending arbitration, based on arbitration clauses in the subcontract between M&S and Best and in the prime contract between M&S and Presbyterian. Best opposed the petition. Best argued that Seals and Alcantara could not be compelled to arbitrate; that arbitration would subject Best to a risk of inconsistent results; and that the court had authority under Code of Civil Procedure section 1281.2 to refuse to enforce the arbitration clause.[2]

---

[1] Best alleged causes of action for foreclosure of a mechanic's lien (against Presbyterian and M&S), breach of contract and quantum meruit (against M&S), unfair business practices (against M&S, Seals, and Alcantara), and negligence (against all defendants).

[2] Code of Civil Procedure section 1281.2 states, in part: "On petition of a party to an arbitration agreement . . . , the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] (c) A party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related

The trial court initially granted M&S's petition.[3] However, after two more rounds of briefing and hearings, the trial court denied M&S's petition to compel arbitration. The trial court observed:

—The main factual disputes involved whether M&S's improper management of the contract work caused Best's delay in completing the project; whether the inspections Seals and Alcantara performed were improper; and the nature of the legal relationship between Presbyterian and the inspectors.

—Presbyterian agreed to participate in arbitration so long as the entire action was heard in that forum, but the inspectors were not parties to an arbitration agreement and did not stipulate to arbitration.

—Both Seals and Alcantara had filed cross-complaints for indemnity and declaratory relief.

The court concluded: "Separating the claims to be judicially determined and those subject to arbitration would not serve judicial economy and more importantly, may lead to inconsistent results. [Citation.] The issues between the parties . . . overlap and would have to be heard and decided in both forums. Multiple rulings will likely create problems. First, if a portion of the case is sent to arbitration in accordance with the contracts, the arbitrator could find that the inspectors acted as agents, thereby exposing Presbyterian to liability. The inspectors['] interest would not adequately be represented in that forum. Once agency was found, Presbyterian would likely seek indemnity from the inspectors. The court, not bound by the arbitrator's findings, would have to decide the issue of agency and might find that there was none.

---

transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . . [¶] . . . [¶] If the court determines that a party to the arbitration is also a party to litigation in a pending court action . . . with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action . . . ."

[3] The trial court initially ruled that Seals and Alcantara were acting within the scope of their employment and were Presbyterian's agents, "which would require them to submit to arbitration under the contract." Seals moved for clarification. The court modified its order, striking the language that the inspectors were Presbyterian's agents, and set the matter for reconsideration. After supplemental briefing, the trial court again modified its earlier order. It directed Presbyterian, Seals, and Alcantara to litigate the agency issue, and stayed the arbitration pending the outcome of that litigation. Then, at Best's request, and without objection, the trial court set a hearing to clarify its modified order.

If it finds that there was no agency, Presbyterian would still be bound by the inconsistent arbitration decision. Second, the issue of whether the inspectors were at fault would have to be determined in both forums. The amount of fault assigned to them, if any, would likely differ. Finally, the resolution of these issues also affects the finding as to whether Presbyterian is independently liable for negligently hiring the inspectors and improperly ratifying their alleged misconduct. [¶] . . . The somewhat unique facts of this case require, in the interest of judicial economy, that the various disputes between the parties be heard in the same forum. Balancing the interests of the parties who signed a contractual arbitration agreement with those who did not, the court finds that equity rules in favor of denying the petition to compel arbitration and the action litigated in one forum."

M&S filed a timely appeal from the trial court's order.

## DISCUSSION

M&S raises two arguments. First, M&S contends that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) governs its arbitration agreement with Best, and the FAA does not give the trial court discretion to deny arbitration. Second, M&S contends that, even if California law applies, the trial court erred in refusing to order arbitration because there is no possibility of conflicting rulings. We disagree on both points, and affirm the order.[4]

### A. *The FAA does not preempt section 1281.2 here.*

The FAA governs contracts in interstate commerce. Unlike its California counterpart, the FAA "contains no provision permitting a court to stay arbitration pending resolution of related litigation involving third parties not bound by the arbitration agreement." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 472 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*).) However, the United States Supreme Court has expressly held that the FAA does not preempt the California statute, Code of Civil Procedure section 1281.2, subdivision (c) (hereafter, section 1281.2(c)), "where the parties have agreed that their arbitration agreement will be governed by the law of California." (489 U.S. at p. 470.) The court explained that the FAA "does not confer a right to compel arbitration of any dispute at any time; it confers only

---

[4] In its reply, M&S also contends that Presbyterian's brief should be stricken. M&S asserts Presbyterian has no standing as a respondent, as M&S has not yet sought to bring Presbyterian into the arbitration. But M&S's trial court petition expressly stated its intention to do just that. In any event, Presbyterian is a party to the trial court proceedings with a clear interest in the merits of the trial court's ruling and in the resolution of this appeal.

the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement.*' " (489 U.S. at pp. 474–475, quoting 9 U.S.C. § 4.) So, even if the FAA applies because the subcontract affects interstate commerce—a point we need not discuss—the parties may agree that California law governs their agreement to arbitrate.

*Volt* is illustrative, and controlling. In *Volt*, a construction contract contained an agreement to arbitrate all disputes arising from the contract. The contract also contained a choice-of-law clause, providing that the contract would be governed by the law of " 'the place where the Project is located.' " (*Volt, supra*, 489 U.S. at p. 470.) That place was California. The Supreme Court affirmed a California court of appeal decision finding that, "by incorporating the California rules of arbitration into their agreement, the parties had agreed that arbitration would not proceed in situations which fell within the scope of [section 1281.2(c)]." (*Volt, supra*, 489 U.S. at p. 475.) The Supreme Court concluded that application of section 1281.2(c) would not undermine the FAA's policies and goals.[5] (489 U.S. at p. 479.)

Our own Supreme Court also has held that, where the parties both provided that California law would govern their arbitration agreement and agreed that the designation of California law would " 'not be deemed an election to preclude application of the [FAA], if it would be applicable,' " the FAA did not preempt the application of section 1281.2(c). (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 380 [25 Cal.Rptr.3d 540, 107 P.3d 217] (*Cronus*).)

The subcontract here between Best and M&S did not contain a choice-of-law provision. However, the subcontract stated that any dispute resolution procedure in the prime contract was incorporated in the subcontract and would apply to any disputes arising under the subcontract:

"20.1 Preliminary Dispute Resolution Procedure and Agreement to Arbitrate

"(a) Disputes under Prime Contract. Any dispute resolution procedure in the prime contract shall be deemed incorporated in this Agreement, and shall apply to any disputes arising hereunder, except disputes not involving the

---

[5] "[T]he FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citations.] But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. . . . Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." (*Volt, supra*, 489 U.S. at pp. 478–479.)

acts, omissions or otherwise the responsibility of the Owner under the prime contract, those which have been waived by the making or acceptance of final payment, and questions regarding the licensure of the Subcontractor."[6] The prime contract contained an arbitration provision covering any claim arising out of or related to the contract.[7] It also provided, in section 13.1.1, that the contract "shall be governed by the law of the place where the Project is located."

■ On these facts, we conclude that Best and M&S agreed that California law would apply to any disputes arising under the subcontract. Accordingly, under the teachings of *Volt* and *Cronus*, there is no basis to conclude the FAA preempts the application of California procedural law, including section 1281.2(c). *Cronus*, which involved a clause calling for application of the FAA "if it would be applicable," brings the point home. The court observed: "Under United States Supreme Court jurisprudence, we examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law and, if any ambiguity exists, to determine whether section 1281.2(c) conflicts with or frustrates the objectives of the FAA." (*Cronus, supra*, 35 Cal.4th at p. 383.) The court found the FAA's procedural provisions applied only in federal court proceedings (*Cronus, supra*, 35 Cal.4th at pp. 388–389), and did not conflict with Code of Civil Procedure section 1281.2. (35 Cal.4th at p. 390.) The court concluded: "Our opinion does not preclude parties to an arbitration agreement to

---

[6] Subsection 20.2 of the subcontract describes the arbitration procedures that apply "[i]n the event the prime contract contains an arbitration provision or for disputes not involving the acts, omissions or otherwise the responsibility of the Owner under the prime contract . . . ." These procedures include the following:

—Paragraph (a) states: "For arbitration under the prime contract, notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and shall conform to the requirements of the arbitration provision set forth in the prime contract. For claims not involving the acts, omissions or otherwise the responsibility of the Owner under the prime contract, the parties hereto shall submit any and all disputes arising under or relating to the terms and conditions of the Subcontract to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association. . . ."

—Paragraph (d), on consolidated arbitration proceedings, states in part: "Claims and disputes of Owner [Presbyterian], Contractor, Subcontractor and other subcontractors, suppliers and/or materialmen involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding. . . ."

[7] Section 4.6 of the prime contract governs arbitration. Its relevant subsections state:

"4.6.1 Any Claim arising out of or related to the Contract shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation . . . .

"4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect . . . ."

*expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law. We simply hold that the language of the arbitration clause in this case, calling for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of 1281.2(c), because it does not conflict with the applicable provisions of the FAA and does not undermine or frustrate the FAA's substantive policy favoring arbitration." (*Cronus, supra*, 35 Cal.4th at p. 394.)

Faced with these authorities, M&S contends that its subcontract contains no agreement that arbitration would be governed by California law. According to M&S, (a) the subcontract incorporates only the dispute resolution procedure in the prime contract, not the choice-of-law provision; (b) the incorporated procedure applies only to disputes under the prime contract, and Best's claim against M&S "arises solely under the Subcontract"; and (c) even if the subcontract incorporated the choice-of-law provision in the prime contract, "it would only apply to arbitration proceedings involving [Presbyterian]." M&S is mistaken on all counts.

As to M&S's first point, a contract's dispute resolution procedures do not exist in a vacuum. They necessarily are subject to the contract's choice-of-law provision. Indeed, that is what *Volt* was all about: a construction contract with both an agreement to arbitrate and a separate choice-of-law clause by which the parties effectively "incorporat[ed] the California rules of arbitration into their agreement . . . ." (*Volt, supra*, 489 U.S. at p. 475; see also *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101 [284 Cal.Rptr. 255] [deed of trust contained choice-of-law provision that had the effect of making loan contract arbitrable under California law rather than FAA].) Accordingly, we reject the notion that the dispute resolution procedure in the prime contract between M&S and Presbyterian does not include an agreement that the contract would be "governed by the law of the place where the Project is located." The subcontract's incorporation of the prime contract's dispute resolution procedure necessarily includes the parties' explicit choice of the law that would govern the resolution of any dispute.

M&S's second assertion—that the dispute resolution procedure incorporated from the prime contract does not apply because Best's claim against M&S "arises solely under the Subcontract"—is equally misplaced. Arbitration of Best's claim against M&S necessarily would involve Best's claim against Presbyterian and cross-claims for indemnity by M&S against Presbyterian. The subcontract expressly provides that "[c]laims and disputes of Owner [Presbyterian],

Contractor [M&S], Subcontractor [Best] and other subcontractors, suppliers and/or materialmen involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding." M&S's third contention—that even if the subcontract incorporated the choice-of-law provision in the prime contract, "it would only apply to arbitration proceedings involving [Presbyterian]"—is misguided for the same reason: the subcontract calls for a single, consolidated arbitration proceeding to which Presbyterian necessarily would be a party, and to which the incorporated choice-of-law provision necessarily would apply.

■ In sum: M&S and Presbyterian agreed in the prime contract that California law—the law of "the place where the Project is located"—would govern the contract. By definition, that choice of law applies to any disputes under the contract. (See *Volt, supra,* 489 U.S. at p. 470.) M&S and Best agreed in the subcontract that the dispute resolution procedure in the prime contract would apply to "any disputes arising hereunder, except disputes not involving the acts, omissions or otherwise the responsibility of [Presbyterian] under the prime contract. . . ." *Volt* specifically held that, where parties have agreed to abide by state rules of arbitration, enforcing those rules—including Code of Civil Procedure section 1281.2—is fully consistent with the goals of the FAA. (*Volt, supra,* 489 U.S. at p. 479.) Accordingly, there is no merit to M&S's claim that the FAA deprives the trial court of discretion under section 1281.2(c) to refuse to enforce the arbitration agreement.

### B. *The trial court did not abuse its discretion in refusing to enforce the arbitration agreement between M&S and Best.*

■ As we have seen, section 1281.2(c) gives the trial court the discretion to refuse to enforce an arbitration agreement if a party to the agreement is also a party to a pending court case with a third party and there is a possibility of conflicting rulings on a common issue of law or fact. In this case, we see no abuse of the trial court's discretion. (*Henry v. Alcove Investment, Inc., supra,* 233 Cal.App.3d at p. 101 ["standard of review for an order staying or denying arbitration under section 1281.2, subdivision (c) is the well-known test for abuse of discretion"; trial court's order "will not be disturbed on appeal unless it exceeds the bounds of reason"].)

The trial court thoroughly enunciated the considerations that led it to conclude that the action should be litigated in a single forum: The inspectors, Seals and Alcantara, could not be compelled to arbitrate. Separating the claims subject to arbitration from those that cannot be arbitrated could lead to inconsistent results. An arbitrator might find the inspectors acted as agents, thereby exposing Presbyterian to liability. The inspectors' interests would not

be represented adequately in an arbitration to which they are not parties. The court also would have to decide the issue of agency, and might find that there was none, but Presbyterian still would be bound by the inconsistent arbitration decision. Whether the inspectors were at fault would have to be determined in both forums. The resolution of those issues would "also [affect] the finding as to whether Presbyterian is independently liable for negligently hiring the inspectors and improperly ratifying their alleged misconduct."

M&S insists that—as a matter of fact and law—there is no possibility of inconsistent rulings "on any common issues relating to M&S," and the trial court therefore had no discretion to deny M&S's petition for arbitration. M&S asserts that the issues relating to the inspectors' status as agents applies only to Presbyterian, not to M&S, and that the only issue between Best and M&S is whether M&S's improper management of the contract work interfered with Best's completion of the project—a "separate, and independent claim" from those made against Presbyterian and the inspectors. But Best's claim against M&S is not "separate, and independent." M&S ignores Best's allegation that the improper and illegal inspection activities were carried on with the full knowledge, consent, authorization, or ratification of M&S, as well as of Seals and Presbyterian.[8] As Best points out, M&S as general contractor was in a logical position to know about the inspectors designated to inspect Best's work and to allow inspections and access to the project. It is difficult to disagree with Best's assertion that the agency and ratification issues are a central part of its claims against M&S as well as Presbyterian. So Best's claims against M&S "cannot be neatly set aside and arbitrated without potentially seriously prejudicing all of the other parties."

In sum, M&S's claim that, as a matter of law, no possibility exists of conflicting rulings on a common issue of law or fact does not survive analysis. Nor can we say that the trial court exceeded the bounds of reason when it decided, on that basis, to deny M&S's petition to compel arbitration.

---

[8] M&S contends Best's motive for joining its claims against Presbyterian, the inspectors, and M&S was "transparent from the outset." M&S argues that the mere inclusion of claims against additional defendants not subject to arbitration is not a legally sufficient basis for avoiding its agreement to arbitrate its claims against M&S, and does not alone establish the possibility of conflicting rulings. The legal point M&S asserts is correct, but its factual predicate is wrong. As the court stated in *Henry v. Alcove Investment, Inc., supra*, 233 Cal.App.3d at page 102: "[T]he plaintiff has done more than merely name third parties as defendants. The complaint alleges the fraudulent acts of those defendants and the connection between those defendants and defendant Alcove. Furthermore, nothing in the record before us suggests plaintiff named these third parties as defendants for the primary purpose of attempting to avoid arbitration with Alcove."

## DISPOSITION

The order is affirmed. The respondents are to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.

On April 11, 2008, the opinion was modified to read as printed above.