Filed 4/7/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMY IMBURGIA et al., | B239361 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC398295) |
| v. | |
| DIRECTV, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  John Shepard Wiley, Jr., Judge.  Affirmed.

_____

Kirkland & Ellis LLP, Melissa D. Ingalls, Robyn E. Bladow, and Shaun Paisley for Defendant and Appellant.

Milstein Adelman LLP, Paul D. Stevens, Mayo L. Makarczyk, and Shireen Mohsenzadegan; Consumer Watchdog, Harvey Rosenfield, and Pamela Pressley; The Evans Law Firm and Ingrid Maria Evans; Law Offices of F. Edie Mermelstein and F. Edie Mermelstein for Plaintiffs and Respondents.

_____

DIRECTV, Inc. moved to dismiss or stay this class action litigation and to compel arbitration. The superior court denied the motion. DIRECTV argues that the motion should have been granted under the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*). We conclude that under the terms of the parties' arbitration agreement, the motion was correctly denied. We therefore affirm.

BACKGROUND

On September 17, 2008, Amy Imburgia filed a class action complaint against DIRECTV, alleging claims for unjust enrichment, declaratory relief, false advertising, and violation of the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and Civil Code section 1671, subdivision (d). Imburgia's claims were based on allegations that DIRECTV has improperly charged early termination fees to its customers. Kathy Greiner filed a similar class action complaint one day after Imburgia, and Imburgia and Greiner (hereafter plaintiffs) jointly filed a first amended complaint on March 16, 2009. Plaintiffs' lawsuit proceeded at the same time as a multidistrict litigation proceeding in federal court involving similar claims. DIRECTV moved to stay plaintiffs' state court action pending the outcome of the multidistrict litigation, but the superior court denied the motion.

Plaintiffs subsequently moved for class certification. On April 20, 2011, the superior court granted the motion in part and denied it in part, certifying a class as to one of plaintiffs' theories but denying certification as to others.

On April 27, 2011, the United States Supreme Court decided *Concepcion*, which held that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts the rule of *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*). *Discover Bank* held that under certain circumstances, class action waivers in consumer contracts are unconscionable and hence unenforceable. (*Id.* at pp. 162-163.)

On May 17, 2011, less than one month after the Court decided *Concepcion*, DIRECTV moved to stay or dismiss plaintiffs' action, decertify the class, and compel

arbitration of plaintiffs' claims. DIRECTV explained that it had not moved to compel arbitration earlier because, in an unrelated case several years before plaintiffs filed this litigation, the Court of Appeal had held that the arbitration provision in DIRECTV's customer agreement was unenforceable under *Discover Bank*. (See *Cohen v. DIRECTV, Inc.* (2006) 142 Cal.App.4th 1442, 1455.) Until *Concepcion* held that the FAA preempts the rule of *Discover Bank*, DIRECTV consequently believed that a motion to compel arbitration would be futile.

The relevant arbitration provision is contained in section 9 of DIRECTV's 2007 customer agreement. Section 9 provides that "any legal or equitable claim relating to this Agreement, any addendum, or your Service" will first be addressed through an informal process and, if the claim is not resolved informally, then "any Claim either of us asserts will be resolved only by binding arbitration" under JAMS rules. Under the heading "Special Rules," section 9 of the agreement provides as follows: "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable."

Section 10 of the 2007 customer agreement contains provisions addressing several miscellaneous matters, including the following provision concerning "Applicable Law": "The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act."

Plaintiffs opposed the motion to compel arbitration on numerous grounds. The superior court denied the motion, and DIRECTV timely appealed.

3

STANDARD OF REVIEW

"On appeal from the denial of a motion to compel arbitration, 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law. [Citations.]' (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 764.)" (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.) We review the superior court's ruling, not its reasoning, and we consequently may affirm on the basis of any valid legal theory, regardless of whether the superior court relied on it. (See, e.g., *Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 663-664.)

DISCUSSION

In addition to stating that the parties waive their rights to bring class claims, section 9 of the 2007 customer agreement states that if "the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable." Plaintiffs argue that the law of California would find the class action waiver unenforceable because, for example, the CLRA expressly precludes waiver of the right to bring a class action under the CLRA. (Civ. Code, §§ 1751, 1781, subd. (a).) Plaintiffs conclude that the parties' entire arbitration agreement is unenforceable, pursuant to the agreement's express terms, because the law of plaintiffs' state would find the class action waiver unenforceable. We agree.

As all parties point out, the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 (*Volt*).) The FAA's broad policy of enforcement of arbitration agreements according to their terms applies even to "agreements to arbitrate under different rules than those set forth in the [FAA] itself." (*Id.* at p. 479.) Thus, if "parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA," even if application of the state rules would yield a different result from application of the FAA. (*Ibid.*; see also *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1352-1353 (*Cable Connection*); *Best Interiors, Inc. v. Millie &*

4

*Severson, Inc.* (2008) 161 Cal.App.4th 1320, 1326 ["even if the FAA applies because the [contract] affects interstate commerce . . . the parties may agree that California law governs their agreement to arbitrate"].) Consequently, although it is impossible for parties to "'opt out' of FAA coverage in its entirety because it is the FAA itself that authorizes parties to choose different rules in the first place," it is in other respects permissible for the parties to "opt out of the FAA's default rules." (*Ario v. The Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account* (3d Cir. 2010) 618 F.3d 277, 288 (*Ario*).) In particular, a choice of law provision in an arbitration agreement is, in general, enforceable to the same extent as a choice of law provision in any other contract. (See generally *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-466 [articulating the standard for enforcement of contractual choice of law provisions under California law].) We have previously held that the parties to a contract may choose the law under which the enforceability of a class action waiver is to be determined. (*Discover Bank v. Superior Court* (2005) 134 Cal.App.4th 886, 889.)

Under the foregoing principles, if section 9 of DIRECTV's 2007 customer agreement had said that the enforceability of the class action waiver "shall be determined under the law of your state to the extent that it is not preempted by the FAA," then that provision would have been enforceable. Likewise, if section 9 had said that the enforceability of the class action waiver "shall be determined under the law of your state without considering the preemptive effect, if any, of the FAA," then that provision would have been enforceable as well. No party argues to the contrary.[1]

---

[1]    We note that *Concepcion* did not hold that the FAA prohibits class arbitration. Rather, the case held that "class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA." (*Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1751].) Parties thus remain free to agree to class arbitration, even under the FAA as interpreted by *Concepcion*. But if the FAA does not prohibit parties from agreeing to class arbitration itself, then the FAA presumably does not prohibit them from agreeing that their agreement will be governed by state laws that are less hostile to class arbitration than the FAA.

Section 9 of the 2007 customer agreement is not, however, as explicit as either of those hypothetical examples.  The question before us, then, is how to interpret section 9's choice of law concerning enforceability of the class action waiver.  Where section 9 requires us to consider whether "the law of your state would find this agreement to dispense with class arbitration procedures unenforceable," does it mean "the law of your state to the extent it is not preempted by the FAA," or "the law of your state without considering the preemptive effect, if any, of the FAA"?  Plaintiffs argue that it means the latter, and we agree.

Plaintiffs' principal argument in favor of their interpretation is that "under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is para[]mount to the general provision."  (*Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1235.)  On that basis, plaintiffs contend that the reference to "the law of your state" in section 9 of the 2007 customer agreement operates as "a specific *exception* to the arbitration agreement's *general* adoption of the FAA" in section 10.  That is, although the agreement provides that in general section 9 is governed by the FAA, section 9 itself provides that the specific issue of the enforceability of the class action waiver shall be governed by "the law of your state."

DIRECTV's sole response to that argument is that "the contract interpretation principle [p]laintiffs invoke applies only where 'the provisions in question are truly inconsistent,'" but "there is no inconsistency" here because "both federal *and* state law have a role."  (Internal quotation marks omitted.)  We are not persuaded.  If we apply state law alone (for example, the antiwaiver provision of the CLRA) to the class action waiver, then the waiver is unenforceable.  If we apply federal law, then the class action waiver is enforceable and any state law to the contrary is preempted.  That is a sufficient inconsistency to make plaintiffs' principle of contract interpretation applicable.  Indeed, the entire preemption analysis of *Concepcion* is based on a conflict or inconsistency between the *Discover Bank* rule and the FAA.  (See *Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1751] ["class arbitration, to the extent it is manufactured by *Discover*

6

*Bank . . .* is inconsistent with the FAA"]; *id.* at pp. 1749-1750 ["the FAA was designed to promote arbitration," and "California's *Discover Bank* rule . . . interferes with arbitration"]; *id.* at p. 1753 ["California's *Discover Bank* rule is preempted by the FAA" because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (internal quotation marks omitted)].)[2]

Our interpretation of the contract finds further support in "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." (*Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 62.)  DIRECTV "drafted an ambiguous document, and [it] cannot now claim the benefit of the doubt.  The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result."  (*Id.* at p. 63.)  Moreover, "[t]hat rationale is well suited to the facts of this case" because  "[a]s a practical matter, it seems unlikely that" plaintiffs anticipated in 2007 that the Supreme Court would hold in 2011 that the FAA preempts the *Discover Bank* rule concerning the

---

[2]      We also note that another provision of section 9 of the 2007 customer agreement appears to reflect the parties' intention to opt out of the FAA in certain respects, notwithstanding section 10's general statement that section 9 is governed by the FAA.  Section 9 provides that "the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so."  The effect of such a provision is to authorize judicial review of arbitration awards for errors of law.  But in *Hall Street Associates, L. L. C. v. Mattel, Inc.* (2008) 552 U.S. 576, the United States Supreme Court held that FAA procedures do not allow judicial review for errors of law, and parties cannot by agreement expand the scope of review under those procedures; the Court expressly declined to hold, however, that the FAA bars state laws from allowing for broader review.  (See *id*. at pp. 586-590; see also *Concepcion*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1752] ["parties may not contractually expand the grounds or nature of judicial review" under the FAA].)  (Under California law, broader judicial review is available by agreement of the parties.  (*Cable Connection*, *supra*, 44 Cal.4th at pp. 1339-1340.))  The United States Supreme Court did not decide that issue until 2008, however, so its bearing on the 2007 customer agreement is not entirely clear.  But the record reflects that DIRECTV's 2009 customer agreement contains the same authorization of judicial review for errors of law, which evidences DIRECTV's intention to opt out of the FAA in at least that respect even though the arbitration provision is in general governed by the FAA.

enforceability of class action waivers in arbitration agreements. (*Ibid.*) "In the face of such doubt, we are unwilling to impute this intent to [plaintiffs]." (*Ibid.*)

Finally, DIRECTV cites three cases as having "rejected" plaintiffs' argument. Two of the cases are readily distinguishable because, unlike the instant case, neither of them involves an arbitration agreement that specifically provides that the enforceability of the class action waiver is to be decided under state law. (See *Litman v. Cellco Partnership* (3d Cir. 2011) 655 F.3d 225, 231, fn. 8 [the agreement provided that state law applied "[e]xcept to the extent we've agreed otherwise in the provision[] on . . . arbitration," the arbitration provision stated that it was governed by the FAA, and the class action waiver stated that "if for some reason the prohibition on class arbitrations . . . is deemed unenforceable, then the agreement to arbitrate will not apply"]; *Meyer v. T-Mobile USA, Inc.* (N.D.Cal. 2011) 836 F.Supp.2d 994, 1001 [the agreement's only choice of law provision stated: "This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located"].)

The third case, however, is a decision in the federal multidistrict litigation that parallels the instant state court actions. In an "[i]ndicative [r]uling" under rule 62.1 of the Federal Rules of Civil Procedure, the federal district court stated that the reference to "the law of your state" in section 9 of the customer agreement could not mean that enforceability of the class action waiver should be determined exclusively under state law, because that would render "meaningless" section 10's general statement that the arbitration agreement is governed by the FAA. (*In re DIRECTV Early Cancellation Fee Marketing and Sales Practices Litigation* (C.D.Cal. 2011) 810 F.Supp.2d 1060, 1071.) We disagree. The specific reference to state law concerning the enforceability of the class action waiver creates a narrow and specific exception to the general provision that the arbitration agreement will be governed by the FAA. It does not render that general provision meaningless. In addition, the district court's analysis does not address the principles that a specific provision controls over a general one and that ambiguous

8

language is construed against the interest of the drafter. For all of these reasons, we decline to follow the district court's decision.

After briefing in this appeal was completed, the United States Court of Appeals for the Ninth Circuit decided a similar case concerning the enforceability of the arbitration provision and class action waiver in DIRECTV's customer agreement under *Concepcion*. (See *Murphy v. DIRECTV, Inc.* (9th Cir. 2013) 724 F.3d 1218 (*Murphy*).) The court held that "the arbitration agreement is enforceable under *Concepcion*," which preempts any state law to the contrary. (*Id.* at p. 1228.) The court reasoned that "the parties' various contract interpretation arguments"—which included both the argument that the specific reference to state law controlled over the general reference to the FAA and the argument that ambiguities should be construed against the drafter—"are largely irrelevant to our analysis," because under the Supremacy Clause of the United States Constitution, and the related doctrine of federal preemption, federal law *is* the law of every state. (*Ibid.*; see also *id.* at p. 1226 ["Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, *is* the law of California and of every other state"]; see generally *id.* at pp. 1225-1228.)

We find the analysis in *Murphy* unpersuasive. On the one hand, insofar as the court's reasoning is a matter of contract interpretation, it means that when the parties used the phrase "the law of your state," they meant "federal law plus (nonfederal) state law." *Murphy* provides no basis for concluding that the parties intended to use the phrase "the law of your state" in such a way, and we are aware of none. On the contrary, a reasonable reader of the customer agreement would naturally interpret the phrase "the law of your state" as referring to (nonfederal) state law, and any ambiguity should be construed against the drafter.[3] On the other hand, insofar as the court reasoned that contract interpretation is irrelevant because the parties are powerless to opt out of the

---

[3] We here insert the parenthetical qualification "nonfederal" only to avoid confusion because *Murphy* states that federal law is state law. (*Murphy*, *supra*, 724 F.3d at p. 1226.) Elsewhere in this opinion, when we have referred to state law, we likewise meant nonfederal state law.

FAA by contract, we are aware of no authority for the court's position. Rather, as we have already observed, if the customer agreement expressly provided that the enforceability of the class action waiver "shall be determined under the (nonfederal) law of your state without considering the preemptive effect, if any, of the FAA," then that choice of law would be enforceable; *Murphy* cites no authority to the contrary.[4] Consequently, the dispositive issue is whether the parties intended to make that choice. As a result, "the parties' various contract interpretation arguments" are not "largely irrelevant." (*Murphy*, *supra*, 724 F.3d at p. 1228.)

To summarize: Section 9 of the 2007 customer agreement provides that "if . . . the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable." The class action waiver is unenforceable under California law, so the entire arbitration agreement is unenforceable. The superior court therefore properly denied the motion to compel arbitration.[5]

---

[4] For example, *Murphy* cites a Third Circuit case for the proposition that, because of the Supremacy Clause, "choice-of-law doctrines (and, accordingly, attempts by contracting parties to influence their application with choice-of-law clauses) have no applicability to answering" the question of whether federal law or (nonfederal) state law supplies the rule of decision. (*Roadway Package System, Inc. v. Kayser* (3d Cir. 2001) 257 F.3d 287, 293-294, abrogated on other grounds in *Hall Street Associates, L. L. C. v. Mattel, Inc.*, *supra*, 552 U.S. at p. 576; see *Murphy*, *supra*, 724 F.3d at p. 1228.) But that Third Circuit case actually held that, *pursuant to the FAA itself*, parties *are* generally free to "'specify by contract the rules under which . . . arbitration will be conducted,'" even if the parties choose (nonfederal) state law rules that are inconsistent with the federal rules that would otherwise be applicable. (*Roadway Package System, Inc. v. Kayser*, *supra*, 257 F.3d at p. 294, quoting *Volt*, *supra*, 489 U.S. at p. 479.) That is the rule on which we rely, and which the Third Circuit recently reaffirmed in *Ario*, *supra*, 618 F.3d at p. 288. Similarly, *Murphy* relies on the dissenting opinion in *Volt* (see *Murphy*, *supra*, 724 F.3d at p. 1227), but that opinion too expressly agreed that parties may choose "state arbitration rules" instead of federal ones. (*Volt*, *supra*, 489 U.S. at p. 481, fn. 4 (Brennan, J., dissenting) ["I do not disagree with the Court's holding . . . that the FAA does not pre[]empt state arbitration rules, even as applied to contracts involving interstate commerce, when the parties have agreed to arbitrate by those rules to the exclusion of federal arbitration law"].)

[5] DIRECTV argues that if the class action waiver is unenforceable as to plaintiffs' CLRA claims, then, at most, the arbitration agreement would be unenforceable as to

DISPOSITION

The order is affirmed.  Respondents shall recover their costs of appeal.

<u>CERTIFIED FOR PUBLICATION</u>.

ROTHSCHILD, Acting P. J.

We concur:


CHANEY, J.


MILLER, J.*

_____

those claims, and the motion to compel arbitration should have been granted as to the remainder of plaintiffs' claims.  We disagree.  The language of the relevant provision of section 9 is broad, stating that "this entire Section 9 is unenforceable" if the class action waiver is unenforceable.  Nothing in the language of the agreement suggests that the parties intended that if some class claims had to be litigated in court, then the parties would still arbitrate any claims as to which the class action waiver was enforceable. On the contrary, the language of the agreement indicates that if the class action waiver is unenforceable, then the parties are not interested in arbitrating at all.  Again, insofar as the language of the agreement is ambiguous, we must construe it against the drafter. (*Mastrobuono v. Shearson Lehman Hutton, Inc.*, *supra*, 514 U.S. at pp. 62-63.)

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11