Filed 12/19/14  Maxwell v. Phares CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THOMAS MAXWELL, | D064849 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. 37-2012-00052464-CU-BC-NC & 37-2013-00029711-CU-BC-NC) |
| DAVID PHARES et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Mass III, Judge.  Affirmed.


Wingert Grebing Brubaker & Juskie, Stephen C. Grebing, Amy L. Simonson and Andrew B. Kleiner for Defendants and Appellants.

Freeland McKinely & McKinley, Karen G. McKinley and Steven A. McKinley for Plaintiff and Respondent.

Defendants and appellants Bruce Keeton, David Phares, and Keeton Construction, Inc. (Keeton Construction)[1] appeal from an order denying their petition to compel arbitration of claims asserted by plaintiff and respondent Thomas Maxwell. Keeton contends that he did not waive his right to arbitration and that Maxwell did not assert any other valid grounds for denying his petition. Here, the record shows an unmistakable waiver of the right to arbitrate. We affirm.

FACTUAL BACKGROUND

In December 2005, Maxwell and Keeton, along with other individuals, formed the French Valley Business Center, LLC (FVBC), a single-project limited liability corporation in which Maxwell was a capital investor and minority shareholder. FVBC was formed for the express purpose of acquiring and holding a leasehold interest in land and developing it as an office complex that would be occupied by various agencies of the County of Riverside (the County).

FVBC is controlled by an Operating Agreement (the Agreement). Pursuant to the Agreement, Keeton and Phares are designated the managers of FVBC. Maxwell is and was at all times a minority owner in FVBC. The Agreement contains an arbitration clause governing "[a]ny controversy or claim arising out of or relating to this Agreement or the Company."[2] Keeton Construction was not a party to the Agreement.

---

[1] Unless otherwise indicated, all references to Keeton include Phares and Keeton Construction.

[2] The Agreement's arbitration provision provides in full: "13.10 Dispute Resolution. Any controversy or claim arising out of or relating to this Agreement or the Company shall be settled by arbitration administered by JAMS, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

In 2008, FVBC and the County entered into related ground leases and office leaseback agreements. Pursuant to the agreements, FVBC would oversee the development of the office complex and then lease it back to the County. As a result of the agreements, FVBC had a value of approximately $67 million on April 1, 2009. Maxwell's share of FVBC was valued at approximately $6.7 million. FVBC invested over $2 million out-of-pocket in negotiating and performing the agreements with the County.

In June 2008, FVBC entered into a contract with Keeton Construction. Keeton Construction was named the general contractor on the project. The contract was amended in January and March of 2009, by which Keeton Construction agreed to comply with relevant laws and assumed the responsibility to report noncompliance with applicable laws.

In April 2009, the County terminated its agreements with FVBC. As a result, FVBC pursued litigation with the County. The parties eventually settled, and FVBC received $6 million from the County.

PROCEDURAL HISTORY

Following resolution of FVBC's claims against the County, Maxwell initiated two separate actions that were eventually consolidated by the trial court. Maxwell brought the first action on his own behalf (the Individual Action) against Keeton as manager of FVBC. Later, Maxwell brought a second action (the Derivative Action) on behalf of FVBC and against Keeton as manager of the project and against Keeton Construction, Inc. as a third party contractor.

3

A. *The Individual Action*

On April 2, 2012, Maxwell filed his initial complaint in the Individual Action against Keeton. The original complaint contained both individual and derivative claims on behalf of FVBC. The complaint alleged constructive fraud, gross negligence, and breach of contract. Maxwell's Individual Action set forth the following allegations: FVBC's agreement with the County required FVBC to obtain all permits for the project by February 1, 2009. Keeton and Phares, as FVBC's managers, failed to comply with this deadline, and the County terminated its contract with FVBC. The County's termination was the foreseeable result of Keeton's and Phares's failure to ensure FVBC complied with the requirements of the agreements with the County and Keeton Construction's breach of agreement with FVBC. FVBC was forced to pursue litigation with the County to obtain some value for the project and eventually settled for $6 million, $60 million less than the project's value.

Maxwell further alleged Keeton and Phares took advantage of their positions as managers and entered into secret deals between themselves and FVBC. These deals violated both the Agreement and Keeton's and Phares's fiduciary duties as managers. After FVBC settled with the County, Keeton and Phares illegally paid themselves money that should have been distributed to Maxwell and other FVBC shareholders pursuant to the Agreement. Keeton and Phares devised a scheme to cover up their wrongdoing by withholding profits and capital contributions from shareholders unless they gave Keeton and Phares a general release of liability.

4

On May 3, 2012, Maxwell voluntarily dismissed, without prejudice, the derivative claims in the Individual Action. On May 10, 2012, Keeton filed a demurrer to the complaint.

On June 29, 2012, Maxwell filed the First Amended Complaint (FAC), alleging breach of contract, constructive fraud, and conversion. On July 9, 2012, Keeton filed a motion to disqualify Maxwell's counsel. On July 12, 2012, Keeton filed a second demurrer, this time in response to Maxwell's FAC.

On July 23, 2012, Keeton propounded on Maxwell the following items: form interrogatories-general; special interrogatories; declaration for additional discovery, special interrogatories set one; requests for admissions; and demand for production of documents for inspection and/or copying.

On August 27, 2012, the trial court overruled Keeton's general demurrer to Maxwell's FAC and denied Keeton's motion to disqualify Maxwell's counsel.

On September 12, 2012, Keeton filed a cross-complaint against Maxwell for breach of contract. The same day, Keeton and Phares filed an answer to Maxwell's FAC.

On November 20, 2012, Keeton filed a case management statement regarding his cross-complaint. Keeton did not select the option for "Binding private arbitration" on the statement.

B. *Derivative Action*

On January 11, 2013, Maxwell filed a separate complaint on behalf of FVBC against Keeton, Phares, and Keeton Construction. The Derivative Action alleged breach of contract, constructive fraud, and negligence. With respect to Keeton Construction's liability, the Derivative Action alleged: Keeton Construction breached the contract with

5

FVBC in part by failing to adequately maintain the construction site and the grading thereof; failing to promptly obtain pad certifications; failing to take all necessary corrective measures upon being notified of such noncompliance; failing to make reports of storm water events, pollution events, corrections, and amendments to the storm water pollution prevention plan; and failing to keep adequate records. As a result of Keeton Construction's breach, FVBC was unable to obtain building permits in a timely manner, which caused the County to terminate the lease and led to the project's failure.

On April 26, 2013, Keeton filed a third demurrer, this time in response to the Derivative Action. On May 16, 2013, Keeton filed a motion for summary judgment or summary adjudication.

On June 10, 2013, Maxwell filed the first amended complaint in the Derivative Action (Derivative FAC). The Derivative FAC was amended to allege gross negligence and conversion. The same day, Keeton filed a motion to require Maxwell to post a bond in the amount of $50,000 as security in conjunction with the Derivative Action.

On June 17, 2013, the trial court consolidated Maxwell's Individual Action and the Derivative Action.

On June 26, 2013, Keeton filed a petition in the trial court to compel arbitration. Maxwell opposed the petition to arbitrate on the grounds, among others, that Keeton had waived the right to arbitrate. Thereafter, Keeton continued to file motions. On July 3, 2013, Keeton filed a fourth demurrer, this time to the Derivative FAC, and a motion to strike portions of the Derivative FAC.

On September 6, 2013, the trial court overruled Keeton's general demurrer to the Derivative FAC with respect to three of the four causes of action. The same day, the trial

6

court denied Keeton's motion to strike portions of the FAC and denied Keeton's petition to compel arbitration.

Keeton filed a timely appeal from the order denying his petition to arbitrate. The order is appealable. (Code Civ. Proc., § 1294, subd. (a).)

DISCUSSION

I.

Standard of Review

"[T]he order denying a petition to compel arbitration, like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.) "We review the superior court's ruling, not its reasoning, and we consequently may affirm on the basis of any valid legal theory, regardless of whether the superior court relied on it." (*Imburgia v. DIRECTV, Inc.* (2014) 225 Cal.App.4th 338, 342.)

Importantly, "[w]hether a party waived the right to contractual arbitration is a factual question we review under the substantial evidence standard of review. [Citations.] The trial court's 'determination of this factual issue, "'if supported by substantial evidence, is binding on an appellate court.'" [Citations.] Only "'in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court.'" [Citation.]' [Citations.]

"We infer all necessary findings supported by substantial evidence [citations] and 'construe any reasonable inference in the manner most favorable to the judgment,

7

resolving all ambiguities to support an affirmance.' [Citation.]" (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443.)

II.

Governing Principles

As a general matter, California favors arbitration between parties to resolve disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 ["the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution'"].) However, while California generally prefers arbitration as a form of dispute resolution, this is not the case when a party fails to timely invoke an arbitration provision. "[T]he benefits [arbitration] can provide, to both the parties and an already overburdened judicial system, become illusory when there is a failure to timely and affirmatively implement the procedure. Mere announcement of the right to compel arbitration is not enough. To properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the dispute. Both of these actions must be taken to secure for the participants the benefits of arbitration." (*Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 997-998; see Code Civ. Proc., § 1281.2)

Thus, "a petition to compel arbitration will be denied when the right has been waived by the proponent's failure to properly and timely assert it." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557.) "[W]aivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.)

8

"[W]aiver may be found where the party seeking arbitration has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct." (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211-212.) "'While engaging in litigation of the matter may be inconsistent with an intent to invoke arbitration, "the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration."'" (*Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337.) On the record before us, it is clear Keeton waived his right to compel arbitration.

## III.

## Analysis

### A. *Keeton Unreasonably Delayed*

"'"[A] demand for arbitration must not be unreasonably delayed. . . . [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration."'" (*Lewis v. Fletcher Jones Motor Cars, Inc.*, *supra*, 205 Cal.App.4th at p. 446.) As the party seeking to compel arbitration, Keeton "'had the responsibility to "timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation."'" (*Ibid.*) "[A] party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 945.)

Here, approximately 15 months passed from the time Maxwell commenced this action until Keeton filed his petition to compel arbitration. During this period, Keeton

9

litigated the merits of Maxwell's claims through multiple demurrers, a motion to strike, a motion to disqualify Maxwell's counsel, and a motion for summary judgment or summary adjudication. Keeton also participated in discovery without raising his right to arbitrate, while Keeton filed a cross-complaint without pleading arbitration as an affirmative defense. This record plainly establishes Keeton unreasonably delayed.

B. *Keeton's Actions Were Inconsistent with an Intent to Arbitrate*

Keeton's conduct during the period of delay also supports a finding he lacked an intent to arbitrate. "'A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. [Citation.] Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify a finding of waiver . . . .' [Citation.] 'The trial court must . . . view the litigation as a whole and determine if the parties' conduct is inconsistent with a desire to arbitrate.'" (*Lewis v. Fletcher Jones Motor Cars, Inc.*, *supra*, 205 Cal.App.4th at pp. 448-449.)

Here, Keeton did not plead arbitration as an affirmative defense. In his answer to Maxwell's FAC, Keeton asserted 22 affirmative defenses and reserved the right to assert others, but did not assert his agreement to arbitrate. (See *Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742 ["an agreement to arbitrate is an affirmative defense"].) Had Keeton wished to arbitrate pursuant to the parties' Agreement, he should have pleaded arbitration as an affirmative defense. (See *Guess?, Inc. v. Superior Court*, *supra*, 79 Cal.App.4th at p. 558 ["At a minimum, the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate"].)

10

On the same day Keeton filed his answer to Maxwell's FAC, Keeton filed a cross-complaint against Maxwell for breach of contract. This action was inconsistent with an intent to arbitrate because filing a cross-complaint prolongs the litigation in the court forum. (See *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 9 ["By seeking to have their cross-complaint adjudicated in court, [the defendants] acted inconsistently with the right to arbitrate"].)

Additionally, Keeton invoked the machinery of the trial court by filing multiple demurrers, a motion to strike portions of Maxwell's FAC, a motion to disqualify counsel, a motion for summary judgment or summary adjudication, and a motion to require Maxwell to post bond in the Derivative Action. These actions, taken as a whole, reflect an unambiguous desire to forego arbitration and to litigate Maxwell's claims in court. (See *Lewis v. Fletcher Jones Motor Cars, Inc.*, *supra*, 205 Cal.App.4th at p. 449 [finding substantial evidence supported trial court's determination of waiver where the defendant litigated the merits of the plaintiff's claim through multiple demurrers, a motion to strike, and multiple discovery requests].)

Finally, Keeton's use of the discovery process was inconsistent with a desire to arbitrate. Keeton propounded the following discovery requests on Maxwell: form interrogatories-general; special interrogatories; declaration for additional discovery, special interrogatories set one; requests for admissions; and demand for production of documents for inspection and/or copying. (See *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 339-340 [finding multiple discovery requests showed lack of intent to arbitrate].) In short, Keeton's actions were contrary to an intent to arbitrate.

11

C. *The Party Opposing Arbitration Was Prejudiced*

Keeton's conduct plainly prejudiced Maxwell. "'"[W]hether or not litigation results in prejudice also is critical in waiver determinations." [Citation.] "The moving party's mere participation in litigation is not enough; the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration." [Citation.]' [Citations.]" (*Lewis v. Fletcher Jones Motor Cars, Inc.*, *supra*, 205 Cal.App.4th at p. 451.) "[A] petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an 'expedient, efficient and cost-effective method to resolve disputes.'" (*Burton v. Cruise*, *supra*, 190 Cal.App.4th at p. 948.) "*[T]he critical factor in demonstrating prejudice is whether the party opposing arbitration has been substantially deprived of the advantages of arbitration as a '"speedy and relatively inexpensive'"' means of dispute resolution.*" (*Ibid.*, italics added.)

Here, Keeton's unreasonable delay and extensive use of the court's resources prejudiced Maxwell. Maxwell responded to four demurrers, a motion to strike portions of his FAC, a motion to disqualify his counsel, a motion for summary judgment or summary adjudication, and a motion to post bond to cover potential court costs. Keeton has also produced over 1,000 documents in response to Keeton's discovery requests. Keeton's court filings have required significant time and financial expenditures and have plainly deprived Maxwell of the speed and cost savings otherwise available in an arbitrable forum.

D. *No Revival*

Keeton contends even if he waived his right to compel arbitration, Maxwell's subsequent pleadings "revived" his right to arbitrate. According to Keeton, Maxwell's "multiple actions and multiple amendments have significantly altered the theory of this litigation." Keeton points to three specific changes in Maxwell's pleadings as justifying revival: (1) the addition of Keeton Construction as a new defendant in the Derivative Action; (2) new causes of action in the Derivative Action against Keeton Construction for breach of contract and negligence; and (3) a new cause of action for conversion in the Derivative FAC.

We agree in some cases an amended pleading "contains charges that, in fairness, should nullify [a party's] earlier waiver." (*Gilmore v. Shearson/American Express, Inc.* (2d Cir. 1987) 811 F.2d 108, 113.) Waiver is nullified where the "amended complaint changed the scope or theory of [the plaintiff's] claims." (*Ibid*.) However, on this record, Maxwell's new pleadings did not materially change the nature or scope of his initial claims.

First, Keeton contends Maxwell's refiling of the Derivative Action naming Keeton Construction as a new defendant revived his right to arbitrate. However, Maxwell's original complaint initially contained *both* individual and derivative claims, and named Keeton Construction as a defendant. Only later did Maxwell voluntarily dismiss, without prejudice, the derivative claims. Because the complaint initially contained both sets of claims and listed Keeton Construction as a defendant, Keeton was put on notice of Maxwell's potential claims and likely defendants. Moreover, Keeton Construction is not an unrelated third party; it is owned and controlled by Keeton himself. Thus, given the

13

nature of Maxwell's allegations, it cannot come as a surprise to Keeton that his own company, which had dealings with FVBC, was later named in this lawsuit.

The second change cited by Keeton was the addition of new causes of action in the Derivative Action for breach of contract and negligence against Keeton Construction. Keeton concedes: "These claims were similar to the Individual Action." In fact, these claims were nearly identical to the two derivative claims included in Maxwell's original complaint in April 2012. The second cause of action in the Derivative Action for breach of contract against Keeton Construction was the fourth cause of action in Maxwell's original complaint in the Individual Action, before Maxwell dismissed it without prejudice. Likewise, the third cause of action in the Derivative Action for negligence against Keeton Construction and Keeton was the fifth cause of action in Maxwell's original complaint in the Individual Action. Keeton cannot claim Maxwell "significantly altered the theory of this litigation" when he simply refiled the same derivative claims against the same corporate defendant at a later date. Thus, the breach of contract and negligence claims in the Derivative Action do not significantly broaden the scope or theory of the litigation and do not nullify Keeton's waiver of the right to arbitrate.

Finally, Keeton contends the addition of a cause of action for conversion in the Derivative FAC revived his right to compel arbitration. We disagree. This cause of action is premised on the exact same set of facts and allegations that Maxwell pleaded in his original complaint. Moreover, Maxwell's FAC in the Individual Action listed conversion as a cause of action based on the same general set of facts. Thus, the addition of this cause of action did not "significantly alter[] the theory of this litigation." Rather, it related to Maxwell's established allegation that Keeton and Phares illegally channeled

14

money from FVBC to themselves.  Accordingly, the addition of a cause of action for conversion did not renew Keeton's right to arbitrate.

In sum, by way of his unreasonable delay and extensive use of the trial court's resources, which defeated the value of arbitration for Maxwell, Keeton waived his rights to arbitration.  The trial court therefore correctly denied Keeton's petition to compel arbitration.  We need not and do not reach Maxwell's alternative contentions that his claims were beyond the scope of the arbitration agreement and that arbitration is inappropriate because of the possibility of conflicting decisions.

## DISPOSITION

The order is affirmed.  Maxwell is entitled to his costs on appeal.

_____

BENKE, Acting P. J.

WE CONCUR:

_____

HUFFMAN, J.

_____

McDONALD, J.

15