(Slip Opinion)          OCTOBER TERM, 2015          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DIRECTV, INC. *v.* IMBURGIA ET AL.

### CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION ONE

No. 14–462.   Argued October 6, 2015—Decided December 14, 2015

Petitioner DIRECTV, Inc., and its customers entered into a service agreement that included a binding arbitration provision with a class-arbitration waiver. It specified that the entire arbitration provision was unenforceable if the "law of your state" made class-arbitration waivers unenforceable. The agreement also declared that the arbitration clause was governed by the Federal Arbitration Act. At the time that respondents, California residents, entered into that agreement with DIRECTV, California law made class-arbitration waivers unenforceable, see *Discover Bank* v. *Superior Court*, 36 Cal. 4th 148, 113 P. 3d 1100. This Court subsequently held in *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333, however, that California's *Discover Bank* rule was pre-empted by the Federal Arbitration Act, 9 U. S. C. §2.

When respondents sued petitioner, the trial court denied DIRECTV's request to order the matter to arbitration, and the California Court of Appeal affirmed. The court thought that California law would render class-arbitration waivers unenforceable, so it held the entire arbitration provision was unenforceable under the agreement. The fact that the Federal Arbitration Act pre-empted that California law did not change the result, the court said, because the parties were free to refer in the contract to California law as it would have been absent federal pre-emption. The court reasoned that the phrase "law of your state" was both a specific provision that should govern more general provisions and an ambiguous provision that should be construed against the drafter. Therefore, the court held, the parties had in fact included California law as it would have been without federal pre-emption.

*Held*: Because the California Court of Appeal's interpretation is pre-

empted by the Federal Arbitration Act, that court must enforce the arbitration agreement. Pp. 5–11.

(a) No one denies that lower courts must follow *Concepcion*, but that elementary point of law does not resolve the case because the parties are free to choose the law governing an arbitration provision, including California law as it would have been if not pre-empted. The state court interpreted the contract to mean that the parties did so, and the interpretation of a contract is ordinarily a matter of state law to which this Court defers, *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 474. The issue here is not whether the court's decision is a correct statement of California law but whether it is consistent with the Federal Arbitration Act. Pp. 5–6.

(b) The California court's interpretation does not place arbitration contracts "on equal footing with all other contracts," *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 443, because California courts would not interpret contracts other than arbitration contracts the same way. Several considerations lead to this conclusion.

First, the phrase "law of your state" is not ambiguous and takes its ordinary meaning: valid state law. Second, California case law—that under "general contract principles," references to California law incorporate the California Legislature's power to change the law retroactively, *Doe* v. *Harris*, 57 Cal. 4th 64, 69–70, 302 P. 3d 598, 601–602—clarifies any doubt about how to interpret it. Third, because the court nowhere suggests that California courts would reach the same interpretation in any other context, its conclusion appears to reflect the subject matter, rather than a general principle that would include state statutes invalidated by other federal law. Fourth, the language the court uses to frame the issue focuses only on arbitration. Fifth, the view that state law retains independent force after being authoritatively invalidated is one courts are unlikely to apply in other contexts. Sixth, none of the principles of contract interpretation relied on by the California court suggests that other California courts would reach the same interpretation elsewhere. The court applied the canon that contracts are construed against the drafter, but the lack of any similar case interpreting similar language to include invalid laws indicates that the antidrafter canon would not lead California courts to reach a similar conclusion in cases not involving arbitration. Pp. 6–10.

225 Cal. App. 4th 338, 170 Cal. Rptr. 3d 190, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, ALITO, and KAGAN, JJ., joined. THOMAS, J., filed a dissenting opinion. GINSBURG, J., filed a dissenting opinion, in which SOTOMAYOR, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 14–462

DIRECTV, INC., PETITIONER *v.* AMY
IMBURGIA, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF
CALIFORNIA, SECOND APPELLATE DISTRICT

[December 14, 2015]

JUSTICE BREYER delivered the opinion of the Court.

The Federal Arbitration Act states that a "written provision" in a contract providing for "settle[ment] by arbitration" of "a controversy . . . arising out of" that "contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2. We here consider a California court's refusal to enforce an arbitration provision in a contract. In our view, that decision does not rest "upon such grounds as exist . . . for the revocation of any contract," and we consequently set that judgment aside.

I

DIRECTV, Inc., the petitioner, entered into a service agreement with its customers, including respondents Amy Imburgia and Kathy Greiner. Section 9 of that contract provides that "any Claim either of us asserts will be resolved only by binding arbitration." App. 128. It then sets forth a waiver of class arbitration, stating that "[n]either you nor we shall be entitled to join or consolidate claims in arbitration." *Id.,* at 128–129. It adds that if the "law of your state" makes the waiver of class arbitration unen-

forceable, then the entire arbitration provision "is unenforceable." *Id.,* at 129. Section 10 of the contract states that §9, the arbitration provision, "shall be governed by the Federal Arbitration Act." *Ibid.*

In 2008, the two respondents brought this lawsuit against DIRECTV in a California state court. They seek damages for early termination fees that they believe violate California law. After various proceedings not here relevant, DIRECTV, pointing to the arbitration provision, asked the court to send the matter to arbitration. The state trial court denied that request, and DIRECTV appealed.

The California Court of Appeal thought that the critical legal question concerned the meaning of the contractual phrase "law of your state," in this case the law of California. Does the law of California make the contract's class-arbitration waiver unenforceable? If so, as the contract provides, the entire arbitration provision is unenforceable. Or does California law permit the parties to agree to waive the right to proceed as a class in arbitration? If so, the arbitration provision is enforceable.

At one point, the law of California would have made the contract's class-arbitration waiver unenforceable. In 2005, the California Supreme Court held in *Discover Bank* v. *Superior Court,* 36 Cal. 4th 148, 162–163, 113 P. 3d 1100, 1110, that a "waiver" of class arbitration in a "consumer contract of adhesion" that "predictably involve[s] small amounts of damages" and meets certain other criteria not contested here is "unconscionable under California law and should not be enforced." See *Cohen* v. *DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1446–1447, 48 Cal. Rptr. 3d 813, 815–816 (2006) (holding a class-action waiver similar to the one at issue here unenforceable pursuant to *Discover Bank*); see also Consumers Legal Remedies Act, Cal. Civ. Code Ann. §§1751, 1781(a) (West 2009) (invalidating class-action waivers for claims brought under that statute). But

in 2011, this Court held that California's *Discover Bank* rule "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" embodied in the Federal Arbitration Act. *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333, 352 (2011) (quoting *Hines* v. *Davidowitz*, 312 U. S. 52, 67 (1941)); see *Sanchez* v. *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 923–924, 353 P. 3d 741, 757 (2015) (holding that *Concepcion* applies to the Consumers Legal Remedies Act to the extent that it would have the same effect as *Discover Bank*). The Federal Arbitration Act therefore pre-empts and invalidates that rule. 563 U. S., at 352; see U. S. Const., Art. VI, cl. 2.

The California Court of Appeal subsequently held in this case that, despite this Court's holding in *Concepcion*, "the law of California would find the class action waiver unenforceable." 225 Cal. App. 4th 338, 342, 170 Cal. Rptr. 3d 190, 194 (2014). The court noted that *Discover Bank* had held agreements to dispense with class-arbitration procedures unenforceable under circumstances such as these. 225 Cal. App. 4th, at 341, 170 Cal. Rptr. 3d, at 194. It conceded that this Court in *Concepcion* had held that the Federal Arbitration Act invalidated California's rule. 225 Cal. App. 4th, at 341, 170 Cal. Rptr. 3d, at 194. But it then concluded that this latter circumstance did not change the result—that the "class action waiver is unenforceable under California law." *Id.*, at 347, 170 Cal. Rptr. 3d, at 198.

In reaching that conclusion, the Court of Appeal referred to two sections of California's Consumers Legal Remedies Act, §§1751, 1781(a), rather than *Discover Bank* itself. See 225 Cal. App. 4th, at 344, 170 Cal. Rptr. 3d, at 195. Section 1751 renders invalid any waiver of the right under §1781(a) to bring a class action for violations of that Act. The Court of Appeal thought that applying "state law alone" (that is, those two sections) would render unenforceable the class-arbitration waiver in §9 of the contract.

*Id.*, at 344, 170 Cal. Rptr. 3d, at 195. But it nonetheless recognized that if it applied federal law "then the class action waiver is enforceable and any state law to the contrary is preempted." *Ibid.* As far as those sections apply to class-arbitration waivers, they embody the *Discover Bank* rule. The California Supreme Court has recognized as much, see *Sanchez*, *supra*, at 923–924, 353 P. 3d, at 757, and no party argues to the contrary. See Supp. Brief for Respondents 2 ("The ruling in *Sanchez* tracks respondents' position precisely"). We shall consequently refer to the here-relevant rule as the *Discover Bank* rule.

The court reasoned that just as the parties were free in their contract to refer to the laws of different States or different nations, so too were they free to refer to California law as it would have been without this Court's holding invalidating the *Discover Bank* rule. The court thought that the parties in their contract had done just that. And it set forth two reasons for believing so.

First, §10 of the contract, stating that the Federal Arbitration Act governs §9 (the arbitration provision), is a *general* provision. But the provision voiding arbitration if the "law of your state" would find the class-arbitration waiver unenforceable is a *specific* provision. The court believed that the specific provision "'is paramount to'" and must govern the general. 225 Cal. App. 4th, at 344, 170 Cal. Rptr. 3d, at 195 (quoting *Prouty* v. *Gores Technology Group*, 121 Cal. App. 4th 1225, 1235, 18 Cal. Rptr. 3d 178, 185–186 (2004); brackets omitted).

Second, the court said that "'a court should construe ambiguous language against the interest of the party that drafted it.'" 255 Cal. App. 4th, at 345, 170 Cal. Rptr. 3d, at 196 (quoting *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U. S. 52, 62 (1995)). DIRECTV had drafted the language; to void the arbitration provision was against its interest. Hence the arbitration provision was void. The

Court of Appeal consequently affirmed the trial court's denial of DIRECTV's motion to enforce the arbitration provision.

The California Supreme Court denied discretionary review. App. to Pet. for Cert. 1a. DIRECTV then filed a petition for a writ of certiorari, noting that the Ninth Circuit had reached the opposite conclusion on precisely the same interpretive question decided by the California Court of Appeal. *Murphy* v. *DirecTV, Inc.*, 724 F. 3d 1218, 1226–1228 (2013). We granted the petition.

## II

No one denies that lower courts must follow this Court's holding in *Concepcion*. The fact that *Concepcion* was a closely divided case, resulting in a decision from which four Justices dissented, has no bearing on that undisputed obligation. Lower court judges are certainly free to note their disagreement with a decision of this Court. But the "Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source." *Howlett* v. *Rose*, 496 U. S. 356, 371 (1990); cf. *Khan* v. *State Oil Co.*, 93 F. 3d 1358, 1363–1364 (CA7 1996), vacated, 522 U. S. 3 (1997). The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it. U. S. Const., Art. VI, cl. 2 ("[T]he Judges in every State shall be bound" by "the Laws of the United States").

While all accept this elementary point of law, that point does not resolve the issue in this case. As the Court of Appeal noted, the Federal Arbitration Act allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including the law governing enforceability of a class-arbitration waiver. 225 Cal. App. 4th, at 342–343, 170 Cal. Rptr. 3d,

at 194.  In principle, they might choose to have portions of their contract governed by the law of Tibet, the law of pre-revolutionary Russia, or (as is relevant here) the law of California including the *Discover Bank* rule and irrespective of that rule's invalidation in *Concepcion*.  The Court of Appeal decided that, as a matter of contract law, the parties did mean the phrase "law of your state" to refer to this last possibility.  Since the interpretation of a contract is ordinarily a matter of state law to which we defer, *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 474 (1989)*,* we must decide not whether its decision is a correct statement of California law but whether (assuming it is) that state law is consistent with the Federal Arbitration Act.

## III

Although we may doubt that the Court of Appeal has correctly interpreted California law, we recognize that California courts are the ultimate authority on that law. While recognizing this, we must decide whether the decision of the California court places arbitration contracts "on equal footing with all other contracts." *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 443 (2006).  And in doing so, we must examine whether the Court of Appeal's decision in fact rests upon "grounds as exist at law or in equity for the revocation of any contract."  9 U. S. C. §2.  That is to say, we look not to grounds that the California court might have offered but rather to those it did in fact offer.  Neither this approach nor our result "steps beyond *Concepcion*" or any other aspect of federal arbitration law.  See *post,* at 9 (GINSBURG, J., dissenting) (hereinafter the dissent).

We recognize, as the dissent points out, *post,* at 4, that when DIRECTV drafted the contract, the parties likely believed that the words "law of your state" included California law that then made class-arbitration waivers unen-

forceable. But that does not answer the legal question before us. That is because this Court subsequently held in *Concepcion* that the *Discover Bank* rule was invalid. Thus the underlying question of contract law at the time the Court of Appeal made its decision was whether the "law of your state" included *invalid* California law. We must now decide whether answering *that* question in the affirmative is consistent with the Federal Arbitration Act. After examining the grounds upon which the Court of Appeal rested its decision, we conclude that California courts would not interpret contracts other than arbitration contracts the same way. Rather, several considerations lead us to conclude that the court's interpretation of this arbitration contract is unique, restricted to that field.

First, we do not believe that the relevant contract language is ambiguous. The contract says that "[i]f . . . the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 [the arbitration section] is unenforceable." App. 129. Absent any indication in the contract that this language is meant to refer to *invalid* state law, it presumably takes its ordinary meaning: *valid* state law. Indeed, neither the parties nor the dissent refer us to any contract case from California or from any other State that interprets similar language to refer to state laws authoritatively held to be invalid. While we recognize that the dissent believes this phrase to be "ambiguous," *post,* at 7, 9, or "anomalous," *post,* at 10, we cannot agree with that characterization.

Second, California case law itself clarifies any doubt about how to interpret the language. The California Supreme Court has held that under "general contract principles," references to California law incorporate the California Legislature's power to change the law retroactively. See *Doe* v. *Harris*, 57 Cal. 4th 64, 69–70, 302 P. 3d 598, 601–602 (2013) (holding that plea agreements, which

are governed by general contract principles, are "'"deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws"'" (quoting *People* v. *Gipson*, 117 Cal. App. 4th 1065, 1070, 12 Cal. Rptr. 3d 478, 481 (2004))). And judicial construction of a statute ordinarily applies retroactively. *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 312–313 (1994). As far as we are aware, the principle of California law announced in *Harris*, not the Court of Appeal's decision here, would ordinarily govern the scope of phrases such as "law of your state."

Third, nothing in the Court of Appeal's reasoning suggests that a California court would reach the same interpretation of "law of your state" in any context other than arbitration. The Court of Appeal did not explain why parties might generally intend the words "law of your state" to encompass "*invalid* law of your state." To the contrary, the contract refers to "state law" that makes the waiver of class arbitration "unenforceable," while an invalid state law would not make a contractual provision unenforceable. Assuming—as we must—that the court's reasoning is a correct statement as to the meaning of "law of your state" in this arbitration provision, we can find nothing in that opinion (nor in any other California case) suggesting that California would generally interpret words such as "law of your state" to include state laws held invalid because they conflict with, say, federal labor statutes, federal pension statutes, federal antidiscrimination laws, the Equal Protection Clause, or the like. Even given our assumption that the Court of Appeal's conclusion is correct, its conclusion appears to reflect the subject matter at issue here (arbitration), rather than a general principle that would apply to contracts using similar language but involving state statutes invalidated by other federal law.

Fourth, the language used by the Court of Appeal fo-

cused only on arbitration. The court asked whether "law of your state" "mean[s] 'the law of your state to the extent it is not preempted by the [Federal Arbitration Act],' or 'the law of your state without considering the preemptive effect, if any of the [Federal Arbitration Act].'" 225 Cal. App. 4th, at 344, 170 Cal. Rptr. 3d, at 195. Framing the question in such terms, rather than in generally applicable terms, suggests that the Court of Appeal could well have meant that its holding was limited to the specific subject matter of this contract—arbitration.

Fifth, the Court of Appeal reasoned that invalid state arbitration law, namely the *Discover Bank* rule, maintained legal force despite this Court's holding in *Concepcion*. The court stated that "[i]f we apply state law alone . . . to the class action waiver, then the waiver is unenforceable." 225 Cal. App. 4th, at 344, 170 Cal. Rptr. 3d, at 195. And at the end of its opinion it reiterated that "[t]he class action waiver is unenforceable under California law, so the entire arbitration agreement is unenforceable." *Id.,* at 347, 170 Cal. Rptr. 3d, at 198. But those statements do not describe California law. See *Concepcion*, 563 U. S., at 344, 352; *Sanchez,* 61 Cal. 4th, at 923–924, 353 P. 3d, at 757. The view that state law retains independent force even after it has been authoritatively invalidated by this Court is one courts are unlikely to accept as a general matter and to apply in other contexts.

Sixth, there is no other principle invoked by the Court of Appeal that suggests that California courts would reach the same interpretation of the words "law of your state" in other contexts. The court said that the phrase "law of your state" constitutes "'a specific *exception*'" to the agreement's "'*general* adoption of the [Federal Arbitration Act].'" 225 Cal. App. 4th, at 344, 170 Cal. Rptr. 3d, at 195. But that tells us nothing about how to interpret the words "law of your state" elsewhere. It does not answer the relevant question: whether those words encompass laws

that have been authoritatively held invalid.  Cf. *Prouty*, 121 Cal. App. 4th, at 1235, 18 Cal. Rptr. 3d, at 185–186 (specific words govern only "when a general and a particular provision are inconsistent").

The court added that it would interpret "'ambiguous language against the interest of the party that drafted it,'" namely DIRECTV.  225 Cal. App. 4th, at 345, 170 Cal. Rptr. 3d, at 196 (quoting *Mastrobuono*, 514 U. S., at 62). The dissent adopts a similar argument.  See *post,* at 7–9. But, as we have pointed out, *supra,* at 8, were the phrase "law of your state" ambiguous, surely some court would have construed that term to incorporate state laws invalidated by, for example, federal labor law, federal pension law, or federal civil rights law.  Yet, we have found no such case.  Moreover, the reach of the canon construing contract language against the drafter must have limits, no matter who the drafter was.  The fact that we can find no similar case interpreting the words "law of your state" to include *invalid* state laws indicates, at the least, that the antidrafter canon would not lead California courts to reach a similar conclusion in similar cases that do not involve arbitration.

\*     \*     \*

Taking these considerations together, we reach a conclusion that, in our view, falls well within the confines of (and goes no further than) present well-established law. California's interpretation of the phrase "law of your state" does not place arbitration contracts "on equal footing with all other contracts," *Buckeye Check Cashing, Inc.*, 546 U. S., at 443.  For that reason, it does not give "due regard . . . to the federal policy favoring arbitration." *Volt Information Sciences*, 489 U. S., at 476.  Thus, the Court of Appeal's interpretation is pre-empted by the Federal Arbitration Act.  See *Perry* v. *Thomas*, 482 U. S. 483, 493, n. 9 (1987) (noting that the Federal Arbitration Act pre-

empts decisions that take their "meaning precisely from the fact that a contract to arbitrate is at issue"). Hence, the California Court of Appeal must "enforc[e]" the arbitration agreement. 9 U. S. C. §2.

The judgment of the California Court of Appeal is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 14–462

————

## DIRECTV, INC., PETITIONER *v.* AMY IMBURGIA, ET AL.

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT

[December 14, 2015]

JUSTICE THOMAS, dissenting.

I remain of the view that the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, does not apply to proceedings in state courts. See *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 285–297 (1995) (dissenting opinion); see also *Preston* v. *Ferrer*, 552 U. S. 346, 363 (2008) (same); *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 449 (2006) (same); *Green Tree Financial Corp.* v. *Bazzle*, 539 U. S. 444, 460 (2003) (same); *Doctor's Associates, Inc.* v. *Casarotto*, 517 U. S. 681, 689 (1996) (same). Thus, the FAA does not require state courts to order arbitration. Accordingly, I would affirm the judgment of the California Court of Appeal.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–462

_____

## DIRECTV, INC., PETITIONER *v.* AMY IMBURGIA, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF
CALIFORNIA, SECOND APPELLATE DISTRICT

[December 14, 2015]

JUSTICE GINSBURG, with whom JUSTICE SOTOMAYOR joins, dissenting.

It has become routine, in a large part due to this Court's decisions, for powerful economic enterprises to write into their form contracts with consumers and employees no-class-action arbitration clauses. The form contract in this case contains a Delphic provision stating that "if the law of your state" does not permit agreements barring class arbitration, then the entire agreement to arbitrate becomes unenforceable, freeing the aggrieved customer to commence class-based litigation in court. This Court reads that provision in a manner most protective of the drafting enterprise. I would read it, as the California court did, to give the customer, not the drafter, the benefit of the doubt. Acknowledging the precedent so far set by the Court, I would take no further step to disarm consumers, leaving them without effective access to justice.

I

This case began as a putative class action in state court claiming that DIRECTV, by imposing hefty early-termination fees, violated California consumer-protective legislation, including the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code Ann. §1750 *et seq.* (West 2015). App. 58. DIRECTV did not initially seek to stop the law-

suit and compel bilateral arbitration.  See *id.,* at 52–53.
The reason for DIRECTV's failure to oppose the litigation
is no mystery.  The version of DIRECTV's service agree-
ment applicable in this case (the 2007 version) requires
consumers to arbitrate all disputes and to forgo class
arbitration.  *Id.,* at 128–129.  If the relevant provision
stopped there, the Court's recent precedent, see *American
Express Co.* v. *Italian Colors Restaurant*, 570 U. S. ___
(2013); *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. 333
(2011), would control, and DIRECTV could have resisted
the lawsuit.  But DIRECTV's form contract continued:
The entire arbitration clause is unenforceable "[i]f . . . the
law of your state would find" unenforceable the agree-
ment's class-arbitration prohibition.  App. 129.  At the time
plaintiff-respondents Imburgia and Greiner commenced
their court action, class-arbitration bars like the one in
DIRECTV's agreement were *per se* unenforceable as un-
conscionable under the law of California.  See *Discover
Bank* v. *Superior Court*, 36 Cal. 4th 148, 162–163, 113
P. 3d 1100, 1110 (2005).

Nearly three years into the litigation, this Court held in
*Concepcion*, 563 U. S., at 338–351, that the Federal Arbi-
tration Act (FAA), 9 U. S. C. §1 *et seq.*, preempts state
rules that render class-arbitration bans unenforceable.
DIRECTV then moved to halt the long-pending lawsuit
and compel bilateral arbitration.  App. to Pet. for Cert. 4a.
The California Superior Court denied DIRECTV's motion,
No. BC398295 (Super. Ct. Los Angeles Cty., Cal., Jan. 26,
2012), App. to Pet. for Cert. 17a–20a, and the Califor-
nia Court of Appeal affirmed.  The Court of Appeal first
observed that, under the California law DIRECTV con-
fronted when it drafted the clause in question, provisions
relinquishing the right to proceed under the CLRA on
behalf of a class would not be enforced.  225 Cal. App. 4th
338, 342, 170 Cal. Rptr. 3d 190, 194 (2014).  The question
dispositive of DIRECTV's motion, the California court

explained, trains on the meaning of the atypical contractual phrase "the law of your state": "does it mean 'the law of your state to the extent it is not preempted by the FAA,' or 'the law of your state without considering the preemptive effect, if any, of the FAA'?" *Id.,* at 344, 170 Cal. Rptr. 3d, at 195.

In resolving this question, the California court emphasized that DIRECTV drafted the service agreement, giving its customers no say in the matter, and reserving to itself the right to modify the agreement unilaterally at any time. *Id.,* at 345, 170 Cal. Rptr. 3d, at 196. See also Brief for Respondents 1–2. DIRECTV used the same take-it-or-leave-it contract everywhere it did business. *Ibid.* "[T]o protect the party who did not choose the language from an unintended or unfair result," the California court applied "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." 225 Cal. App. 4th, at 345, 170 Cal. Rptr. 3d, at 196 (quoting *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* 514 U. S. 52, 62–63 (1995)). That rule was particularly appropriate in this case, the court reasoned, for, "as a practical matter, it seems unlikely that plaintiffs anticipated in 2007 that the Supreme Court would hold in 2011 that the FAA preempts" state-law protection against compelled class-arbitration waivers. 255 Cal. App. 4th, at 345, 170 Cal. Rptr. 3d, at 196 (internal quotation marks omitted).

## II

The Court today holds that the California Court of Appeal interpreted the language in DIRECTV's service agreement so unreasonably as to suggest discrimination against arbitration in violation of the FAA. *Ante,* at 8. As I see it, the California court's interpretation of the "law of your state" provision is not only reasonable, it is entirely right.

Arbitration is a matter of "consent, not coercion." *Stolt-Nielsen S. A.* v. *AnimalFeeds Int'l Corp.*, 559 U. S. 662, 681 (2010) (internal quotation marks omitted). The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (1989). "[T]he interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review." *Id.,* at 474. See also *First Options of Chicago, Inc.* v. *Kaplan,* 514 U. S. 938, 944 (1995) (when interpreting arbitration agreements, courts "should apply ordinary state-law principles that govern the formation of contracts"). Historically, this Court has respected state-court interpretations of arbitration agreements. See *Mastrobuono*, 514 U. S., at 60, n. 4; *Volt Information Sciences*, 489 U. S., at 484. Indeed, in the more than 25 years between *Volt Information Sciences* and this case, not once has this Court reversed a state-court decision on the ground that the state court misapplied state contract law when it determined the meaning of a term in a particular arbitration agreement. Today's decision is a dangerous first.

Beyond genuine debate, DIRECTV originally meant the "law of your state" clause to refer to its customer's home state law untouched by federal preemption. As DIRECTV explained in a state-court filing, the clause prevented enforcement of the arbitration agreement in those States, California among them, where the class-arbitration proscription was unenforceable as a matter of state law, while requiring bilateral arbitration in States that did not outlaw purported waivers of class proceedings. App. 52 ("The Customer Agreement between DIRECTV and its customers provides that the customer's home state laws will govern the relationship, and that any disputes will be resolved in individual arbitration *if* the customer's home

state laws enforce the parties' arbitration agreement."
(emphasis added)).

According to DIRECTV, because the class-arbitration
ban, post-*Concepcion*, is enforceable in all States, this case
must now be resolved, if at all, in bilateral arbitration.
The Court agrees. After *Concepcion*, the Court maintains,
it no longer matters whether DIRECTV meant California's
"home state laws" when it drafted the 2007 version of its
service agreement. But *Concepcion* held only that a State
cannot *compel* a party to engage in class arbitration when
the controlling agreement unconditionally prohibits class
procedures. See 563 U. S., at 351 ("Arbitration is a matter
of contract, and the FAA requires courts to honor parties'
expectations," so parties may consent to class procedures
even though such procedures "may not be required by
state law."). Just as a contract itself may provide for class
arbitration, so the parties may *choose* to be bound by a
particular state law, in this case, the CLRA, even if the
FAA would otherwise displace that state law. *Hall Street
Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576, 586
(2008) ("[T]he FAA lets parties tailor some, even many,
features of arbitration by contract, including . . . procedure
and choice of substantive law.").[1] "In principle," the Court
acknowledges, parties "might choose to have portions of
their contract governed by the law of Tibet, [or] the law of
pre-revolutionary Russia." *Ante,* at 6; see Brief for Peti-
tioner 20 (observing that the FAA would allow parties "to

---

[1] FAA preemption is distinct from federal preemption in other con-
texts. Unlike "state laws invalidated by, for example, federal labor law,
federal pension law, or federal civil rights law," *ante,* at 10, state laws
are preempted by the FAA only to the extent that they conflict with the
contracting parties' intent. See *Mastrobuono* v. *Shearson Lehman
Hutton, Inc.*, 514 U. S. 52, 59 (1995) ("*[I]n the absence of contractual
intent to the contrary*, the FAA would pre-empt" a particular state law.
(emphasis added)); Brief for Law Professors as *Amicus Curiae* 10 ("FAA
preemption cannot occur without reference to a particular agreement of
the parties. . . .").

bind themselves by reference to the rules of a board game"). Pre-revolutionary Russian law, but not California's "home state laws" operative and unquestionably valid in 2007? Makes little sense to me.

Nothing in *Concepcion* or the FAA nullifies provisions of the CLRA. They hold sway when parties elect judicial resolution of their disputes, and should similarly control when parties choose that consumer-protective law to govern their arbitration agreements. See *Volt Information Sciences*, 489 U. S., at 475 (where parties had "incorporat[ed] . . . California rules of arbitration into their agreement," they had "no FAA-guaranteed right to compel arbitration" on terms inconsistent with those California rules).[2] Thus, even after *Concepcion*, one could properly refer to the CLRA's class-waiver proscription as "California law." To repeat, the dispositive question in this case is whether the parties intended the "law of your state" provision to mean state law as preempted by federal law, as the Court today reads the provision, or home state law as framed by the California Legislature, without considering the preemptive effect of federal law, as the California court read it.

The latter reading is the better one. DIRECTV had no occasion to refer to "the law of [its customer's] state" had it meant to incorporate state law as preempted by the FAA. That is, DIRECTV, like virtually every other company with a similar service agreement, could have employed a

---

[2] The Court refers to the relevant California law as the "*Discover Bank* rule" and suggests that, "under 'general contract principles,' references to California law incorporate the California Legislature's power to change the law retroactively." *Ante,* at 7. But despite this Court's rejection of the *Discover Bank* rule in *Concepcion*, the California Legislature has not capitulated; it has retained without change the CLRA's class-waiver prohibition. The *Discover Bank* rule relied on an interpretation of the FAA, see 36 Cal. 4th 148, 162–173, 113 P. 3d 1100, 1100–1117 (2005); in contrast, the CLRA's class-waiver proscription reflects California's legislative policy judgment.

clause directly conditioning enforceability of the arbitration agreement on the exclusion of class arbitration. Indeed, DIRECTV has done just that in service agreements both before and after 2007. App. 121 (the 2004 version provides that "[a] Court may sever any portion of [the arbitration agreement] that it finds to be unenforceable, except for the prohibition on class or representative arbitration"); Brief for Respondents 35–36 (stating that the June 2015 version of DIRECTV's agreement provides that "[a] court may sever any portion of [the arbitration agreement] that it finds to be unenforceable, except for the prohibition on [class arbitration]" (internal quotation marks omitted)). Had DIRECTV followed this pattern in its 2007 form contract, the arbitration agreement, post-*Concepcion*, unquestionably would have been enforceable in all States. In the 2007 version, however, DIRECTV chose a different formulation, one referring to the "law of [its customer's] state." I would not translate that term to be synonymous with "federal law." If DIRECTV meant to exclude the application of California legislation, it surely chose a bizarre way to accomplish that result.

As earlier noted, see *supra,* at 3, and as the California court appreciated, courts generally construe ambiguous contractual terms against the drafter. See *Mastrobuono*, 514 U. S., at 63 ("Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt."). This "common-law rule of contract interpretation," *id.,* at 62, reflects the principle that a party should not be permitted to write an ambiguous term, lock another party into agreeing to that term, and then reap the benefit of the ambiguity once a dispute emerges. The rule has particular force where, as here, a court is interpreting a "standardized contrac[t]" that was not the product of bilateral bargaining. Restatement (Second) of Contracts §206, Comment *a* (1979).

Allowing DIRECTV to reap the benefit of an ambiguity

it could have avoided would ignore not just the hugely unequal bargaining power of the parties, but also their reasonable expectations at the time the contract was formed. See *Mastrobuono*, 514 U. S., at 63 (it is particularly appropriate to construe terms against the drafter where the other party had no reason to anticipate or intend the drafter's preferred result). See also *Trans World Airlines, Inc.* v. *Franklin Mint Corp.*, 466 U. S. 243, 262 (1984) ("[C]ontract[s] . . . are to be read in the light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the [parties] thereby contracting." (quoting *Rocca* v. *Thompson*, 223 U. S. 317, 331–332 (1912); ellipsis in original)). At the time DIRECTV imposed this agreement on its customers, it assumed that the arbitration clause would be unenforceable in California. App. 52 (explaining in state-court filing that, "[b]ecause California law would not enforce the arbitration agreement . . . , DIRECTV has not sought and will not seek to arbitrate disputes with California customers"). Likewise, any California customer who read the agreement would scarcely have understood that she had submitted to bilateral arbitration of any and all disputes with DIRECTV. She certainly would have had no reason to anticipate the Court's decision in *Concepcion*, rendered four years later, or to consider whether "law of your state" is a chameleon term meaning California legislation when she received her service contract, but preemptive federal law later on.

DIRECTV primarily responds that the FAA requires construction of all terms in arbitration agreements in favor of arbitrability. True, this Court has found in the FAA a "federal policy favoring arbitration." *Ante,* at 10 (quoting *Volt Information Sciences*, 489 U. S., at 476). But the Court has also cautioned that an arbitration-favoring presumption applies "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a

particular dispute is what the parties intended because their express agreement to arbitrate was validly formed[, is] legally enforceable[,] and [is] best construed to encompass the dispute." *Granite Rock Co.* v. *Teamsters*, 561 U. S. 287, 303 (2010). DIRECTV acknowledges that "[t]his case . . . involves a threshold dispute over the enforceability of the parties' arbitration agreement" in its entirety. Reply Brief 7. Like the California court, I would resolve that dispute by employing traditional rules of contract interpretation *sans* any arbitration-favoring presumption, including the rule that ambiguous language should be construed against the drafter. See *supra,* at 3, 7.

### III

Today's decision steps beyond *Concepcion* and *Italian Colors*. There, as here, the Court misread the FAA to deprive consumers of effective relief against powerful economic entities that write no-class-action arbitration clauses into their form contracts. In *Concepcion*, 563 U. S., at 336, customers brought a class action claiming that AT&T Mobility had improperly charged $30.22 in sales tax while advertising cellular telephones as free. AT&T Mobility's form consumer contract contained a mandatory arbitration clause and a class-arbitration proscription. Because consumers lacked input into the contractual terms, and because few rational consumers would go through the hassle of pursuing a $30.22 claim in bilateral arbitration, the California courts deemed the arbitration agreement unenforceable as unconscionable. See *id.*, at 365 (BREYER, J., dissenting) ("'[T]he maximum gain to a customer for the hassle of arbitrating a $30.22 dispute is still just $30.22.'" (quoting *Laster* v. *AT&T Mobility LLC*, 584 F. 3d 849, 856 (CA9 2009))); *Carnegie* v. *Household Int'l, Inc.*, 376 F. 3d 656, 661 (CA7 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a luna-

tic or a fanatic sues for $30."), cert. denied, 543 U. S. 1051 (2005). Nonetheless, the Court held that the FAA mandated enforcement of the entire arbitration agreement, including the class-arbitration ban. *Concepcion*, 563 U. S., at 343. Two years later, in *Italian Colors*, 570 U. S., at ___ (slip op., at 5), the Court reaffirmed that class-arbitration prohibitions are enforceable even where claimants "have no economic incentive to pursue their . . . claims individually in arbitration." Today, the Court holds that consumers lack not only protection against unambiguous class-arbitration bans in adhesion contracts. They lack even the benefit of the doubt when anomalous terms in such contracts reasonably could be construed to protect their rights.[3]

———————

[3] It has not always been this way. In *Wilko* v. *Swan*, 346 U. S. 427, 435, 438 (1953), the Court unanimously held that an arbitration clause in a brokerage agreement was unenforceable. The Court noted that the Securities Act was "drafted with an eye to the disadvantages under which buyers labor" when negotiating brokerage agreements, *id.,* at 435, and described arbitration as less protective of the rights of stock buyers than litigation, *id.,* at 435–437. The Court later overruled *Wilko*, rejecting what it described as *Wilko*'s "suspicion of arbitration as a method of weakening the protections afforded in the substantive law." *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 481 (1989). See also *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 33 (1991) (relying on *Rodriguez de Quijas* to conclude that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). Similarly, before *Italian Colors*, the Court had suggested that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum," and when that is so, an arbitration agreement may be unenforceable. *Green Tree Financial Corp.-Ala.* v. *Randolph*, 531 U. S. 79, 90 (2000). Although the Court in *Italian Colors* did not expressly reject this "effective vindication" principle, the Court's refusal to apply the principle in that case suggests that the principle will no longer apply in any case. See 570 U. S., at ___ (slip op., at 15) (KAGAN, J., dissenting); *CompuCredit Corp.* v. *Greenwood*, 565 U. S. ___, ___–___ (2012) (GINSBURG, J., dissenting) (slip op., at 1–2) (criticizing the Court

These decisions have predictably resulted in the deprivation of consumers' rights to seek redress for losses, and, turning the coin, they have insulated powerful economic interests from liability for violations of consumer-protection laws. See N. Y. Times, Nov. 1, 2015, p. A1, col. 5 ("By inserting individual arbitration clauses into a soaring number of consumer and employment contracts, companies [have] devised a way to circumvent the courts and bar people from joining together in class-action lawsuits, realistically the only tool citizens have to fight illegal or deceitful business practices."). Studies confirm that hardly any consumers take advantage of bilateral arbitration to pursue small-dollar claims. Resnik, Diffusing Disputes: The Public in the Private of Arbitration, the Private in Courts, and the Erasure of Rights, 124 Yale L. J. 2804, 2900–2910 (2015) (Resnik, Diffusing Disputes). Because consumers lack bargaining power to change the terms of consumer adhesion contracts *ex ante*, "[t]he providers [have] won the power to impose a mandatory, no-opt-out system in their own private 'courts' designed to preclude aggregate litigation." Resnik, Fairness in Numbers: A Comment on *AT&T* v. *Concepcion*, *Wal-Mart* v. *Dukes*, and *Turner* v. *Rogers*, 125 Harv. L. Rev. 78, 133 (2011). See also Miller, Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure, 88 N. Y. U. L. Rev. 286, 323 (2013) ("[P]owerful economic entities can impose no-class-action-arbitration clauses on people with little or no bargaining position—through adhesion contracts involving securities accounts, credit cards, mobile phones, car rentals, and many other social amenities and necessities.").[4]

―――――――

for ignoring a federal statutory "right to sue" and for holding "that credit repair organizations can escape suit by providing in their take-it-or-leave-it contracts that arbitration will serve as the parties' sole dispute-resolution mechanism").

[4] The Consumer Financial Protection Bureau recently published a

The proliferation of take-it-or-leave-it agreements mandating arbitration and banning class procedures, and this Court's readiness to enforce such one-sided agreements, have disabled consumers from "shop[ping] to avoid arbitration mandates." Resnik, Diffusing Disputes 2839. See also *id.,* at 2872 ("[T]he numbers of clauses mandating arbitration are soaring across many sectors.").

The Court has suggested that these anticonsumer outcomes flow inexorably from the text and purpose of the FAA. But Congress passed the FAA in 1925 as a response to the reluctance of some judges to enforce commercial arbitration agreements between merchants with relatively equal bargaining power. Moses, Arbitration Law: Who's in Charge? 40 Seton Hall L. Rev. 147, 170–171 (2010). See also *id.,* at 170 (contract disputes between merchants have been a proper subject of arbitration since the 1600's). The FAA's purpose was to "make the contracting party live up to his agreement." H. R. Rep. No. 68–96, at 1 (1924). See also Moses, *supra,* at 147 (Congress sought to "provide federal courts with procedural law that would permit the enforcement of arbitration agreements between merchants in diversity cases."). Congress in 1925 could not have anticipated that the Court would apply the FAA to render consumer adhesion contracts invulnerable to attack by parties who never meaningfully agreed to arbitration in the first place. See Resnik, Diffusing Disputes 2860 ("The merchants and lawyers who forged the public law of arbitration in the United States sought federal legislation to enforce *consensual* agreements." (emphasis added)).

Nor does the text of the FAA compel this result. Section 2, on which the Court relied in *Concepcion*, *Italian Colors*,

––––––––––

study documenting the proliferation of mandatory arbitration clauses containing class-arbitration waivers in consumer financial-services contracts, as well as the vanishingly small number of claims brought by financial-services consumers in bilateral arbitration. See Consumer Financial Protection Bureau, Arbitration Study §1, pp. 9–13 (2015).

and this case, prescribes simply that arbitration provisions are to be treated the same as other contractual terms: "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2. As Justice O'Connor observed when the Court was just beginning to transform the FAA into what it has become, "the Court has abandoned all pretense of ascertaining congressional intent with respect to the Federal Arbitration Act, building instead, case by case, an edifice of its own creation." *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 283 (1995) (concurring opinion). See also Miller, *supra,* at 324 ("[O]ver the years the Act has been transformed by the Supreme Court through constant expansion into an expression of a 'federal policy' favoring arbitration, whether it involves a bilateral business dispute or not.").

The Court's ever-larger expansion of the FAA's scope contrasts sharply with how other countries treat mandatory arbitration clauses in consumer contracts of adhesion. A 1993 European Union Directive forbids binding consumers to unfair contractual terms, defined as those "not . . . individually negotiated" that "caus[e] a significant imbalance in the parties' rights and obligations . . . to the detriment of the consumer." Coun. Directive 93/13, Art. 3, 1993 O. J. (L. 95) 31. A subsequent EU Recommendation interpreted this Directive to bar enforcement of one-party-dictated mandatory consumer arbitration agreements. Comm'n Recommendation 98/257, 1998 O. J. (L. 115) 34 ("The consumer's recourse to the out-of-court procedure may not be the result of a commitment prior to the materialisation of the dispute, where such commitment has the effect of depriving the consumer of his right to bring an action before the courts for the settlement of the dispute."). As a result of this Directive and Recommendation,

disputes between providers and consumers in the EU are arbitrated only when the parties mutually agree to arbitration on a "post-dispute basis." Sternlight, Is the U. S. Out on a Limb? Comparing the U. S. Approach to Mandatory Consumer and Employment Arbitration to That of the Rest of the World, 56 U. Miami L. Rev. 831, 847–848 (2002) (emphasis deleted); see *id.,* at 852 (enforcement of mandatory arbitration clauses in consumer contracts of adhesion "is quite rare, if not nonexistent," outside the United States).

\*　\*　\*

The California Court of Appeal appropriately applied traditional tools of state contract law to interpret DIRECTV's reference to the home state laws of its customers. Demeaning that court's judgment through harsh construction, this Court has again expanded the scope of the FAA, further degrading the rights of consumers and further insulating already powerful economic entities from liability for unlawful acts. I resist the Court's bent, and would affirm the judgment of the California Court of Appeal.